# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. EMERY,<br><br>         Plaintiff,<br><br>    vs.<br><br>MICHAEL HARRIS,<br><br>         Defendant. | ) 1:10cv01947 LJO DLB PC<br>)<br>) FINDINGS AND RECOMMENDATION<br>) REGARDING DEFENDANT'S MOTION<br>) FOR SUMMARY JUDGMENT<br>)<br>) (Document 25)<br>)<br>) THIRTY-DAY OBJECTION DEADLINE<br>) |

Plaintiff Steven C. Emery ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 18, 2010. This action is proceeding on Plaintiff's claim that Defendant Michael Harris used excessive force against him in violation of the Eighth Amendment of the United States Constitution.

On October 19, 2012, Defendant filed this motion for summary judgment. Plaintiff filed an opposition on November 15, 2012, and Defendant filed a reply on November 21, 2012.[1]

## I.   LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of

---

[1] In Defendant's October 19, 2012, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1

law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id. at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

## II.     REQUESTS FOR ADMISSIONS

Defendant requests summary judgment, in part, based on two facts that he contends Plaintiff admitted by failing to timely respond to Requests for Admission. Defendant contends that Plaintiff has admitted that he (1) used an appropriate amount of force; and (2) did not act with intent to cause Plaintiff harm. Although Defendant sets forth alternate arguments, he also moves for summary judgment based solely on these "admitted" facts.

Federal Rule of Civil Procedure 36(a)(3) states that a matter is admitted unless a timely response is served. In his opposition to summary judgment, Plaintiff disputes that the requests should be deemed admitted, and the Court therefore construes this as a request to withdraw the admission under Rule 36(b).

Pursuant to Rule 36(b) of the Federal Rules of Civil Procedure,

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

If upholding the admission would eliminate presentation of the merits of the action, then allowing withdrawal of the admission would promote the presentation of the merits and satisfy the first prong of the test. Fed.R.Civ.P. 36(b); see Conlon v. United States, 474 F.3d 616, 622 (9th Cir.2007) (citing Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995)).

Here, the responses were due on or about May 7, 2012. On May 9, 2012, the date of Plaintiff's deposition, defense counsel asked Plaintiff about his responses. Plaintiff stated that he had completed a copy for himself, but has been unable to make any copies because the prison has been on lockdown. Defense counsel asked Plaintiff if he intended to send the responses soon, and he stated, "Yes, forthwith." Nield Decl., Ex. L (Pl.'s Dep.), 8. Plaintiff provided responses on June 21, 2012. Nield Decl. ¶ 16. The proof of service was dated June 12, 2012. Nield Decl., Ex. N. In his opposition, Plaintiff again states that the prison was on lockdown and he was prevented from getting copies from the law library.

The Court finds that withdrawal of the admissions would promote presentation of the merits of this action. Plaintiff clearly intended to respond to the requests, as evidenced by his statement at his deposition. Moreover, by asking Plaintiff, a pro se prisoner, if he intended to

send the responses soon and accepting his affirmative response without objection, defense counsel suggests that a late response will be permitted. Plaintiff ultimately served his responses on June 12, 2012, approximately four months prior to the filing of the summary judgment motion.

In his reply, Defendant contends that Plaintiff's explanation is without merit. In support, he explains that according to the Program Status Reports for Facility D, inmates had normal library access from May 7, 2012, through May 27, 2012. Collins Decl. ¶ 7. From this, Defendant concludes that Plaintiff had sufficient access to the law library during this time, yet failed to serve his responses until June. This argument, however, suggests that Defendant would have accepted late responses had they been served during this period of law library access. In turn, Defendant's contention that he will not accept the responses, which were sent 15 days after his law library access ended, appears arbitrary. Defendant also fails to recognize that Plaintiff *did not* have normal access to the library for almost two weeks prior to the May 7, 2012, due date. Collins Decl., Ex A.

Under these circumstances and in light of Plaintiff's pro se prisoner status, the Court further finds that Defendant would not be prejudiced in maintaining or defending the action on the merits.

Therefore, the Court will consider Plaintiff's admissions withdrawn and will not discuss them further in this order.

### III. STATEMENT OF UNDISPUTED FACTS

Plaintiff is an inmate at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California. Compl. 1. Defendant Harris is a correctional officer at SATF. Compl. 2.

On March 3, 2007, Plaintiff received a Rules Violation Report after he refused to cell with an African American prisoner. Nield Decl., Ex. B. On June 1, 2007, Plaintiff received another Rules Violation Report for refusing to accept a non-white cellmate. Nield Decl., Ex. C.

As a result, Plaintiff was transferred to Administrative Segregation. Nield Decl., Ex. D. During his deposition, Plaintiff testified that he is an Odinist and that he can only cell with other Odinists or white people because somebody with different beliefs would "desecrate" his "hallowed area…" Pl.'s Dep. 61.

On June 14, 2007, Plaintiff went to the Programming Office to obtain a package from Defendant Harris. Pl.'s Dep. 20. Plaintiff gave Defendant Harris his identification card, but Defendant refused to provide the package to Plaintiff because he believed that the package contained property that belonged to another inmate. Nield Decl. Ex. E; Pl.'s Dep. 20. Plaintiff and Defendant then argued and Plaintiff left to get a drink of water. Pl.'s Dep. 21.

Soon after, Plaintiff and Defendant Harris met again and Defendant Harris gave Plaintiff's identification card back to him. Nield Decl. Ex. E; Pl.'s Dep. 25. A verbal argument between the two ensued and Plaintiff testified that he "just maybe" called Defendant Harris an "asshole or dumb fucker." Pl.'s Dep. 26. Defendant Harris ordered Plaintiff to return to his housing unit, and Plaintiff told him that he was waiting to talk to the lieutenant. Pl.'s Dep. 25. At that point, Defendant Harris ordered Plaintiff to turn around and cuff up. Nield Decl. Ex. E; Pl.'s Dep. 26. As Defendant Harris was attempting to place handcuffs on Plaintiff, Plaintiff looked over his shoulder. Pl.'s Dep. 28.

Plaintiff and Defendant Harris then engaged in a physical altercation. Nield Decl. Ex. E; Pl.'s Dep. 26-31. Defendant Harris did not use pepper spray or his baton during the altercation. Nield Decl. Ex. E. Responding officers arrived and were able to restrain Plaintiff with the use of pepper-sprayed and batons. Pl.'s Dep. 33; Nield Decl. Ex. F.

In his complaint, Plaintiff states that he sustained "several fractured ribs; various bruises to his face and upper body; various abrasions; a wound and permanent scarring on his lower back at the spine; swelling, pain and stiffness over his entire body." He also states that he suffers continual migraine headaches, lower back pain and post-traumatic stress. Compl. 4,6.

## IV. DISCUSSION

### A. Excessive Force

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Defendant argues that he used a reasonable amount of force under the circumstances, when he punched Plaintiff in order to avoid substantial injuries to himself.  It is undisputed that Plaintiff and Defendant had two verbal disagreements relating to Plaintiff's attempts to pick up a package.  It is also undisputed that when Defendant told Plaintiff to return to his cell, Plaintiff stated that he was waiting to talk to the lieutenant.  At that point, the parties agree that while Defendant was attempting to cuff Plaintiff, Plaintiff glanced over his shoulder.  There is no dispute that Defendant and Plaintiff then engaged in a physical altercation.

The question becomes, then, whether Plaintiff's over-the-shoulder glace was a sufficient threat to justify Defendant Harris's use of force.[2]  Based on the undisputed facts, and even taking into consideration the prior arguments and Plaintiff's desire to speak with the lieutenant instead of returning to his cell, the Court cannot determine whether Plaintiff's glance was a sufficient threat to warrant the use of force.

Instead, the *disputed* facts are key to this analysis.  Defendant maintains that Plaintiff turned towards him as he was being cuffed and swung at him with a closed right fist.  Plaintiff, however, maintains that he was complying with Defendant's orders to cuff up, and that he endured 90 seconds of verbal abuse.[3]  Compl. 4; Pl.'s Decl. ¶¶ 5,6.  Plaintiff states that Defendant then struck Plaintiff on the left side of the face, knocking Plaintiff away from Defendant and to the ground.  As Plaintiff was face down on the ground, Defendant continued to beat him.  Compl. 4; Pl.'s Decl. ¶¶ 8, 9.

---

[2] Defendant, an African American, suggests that he knew that Plaintiff was a "hateful" inmate, and uses this to set the backdrop for the encounter.  However, while it is undisputed that Plaintiff received two Rules Violation Reports for refusing non-white cellmates, Defendant has not established that he knew of this prior to the encounter with Plaintiff.  Indeed, Defendant's undisputed fact states only that Plaintiff "has a history of white supremacist beliefs and actions."  Def.'s Stmt. Undis. Facts 11.

[3] Plaintiff's facts are taken from his October 18, 2010, verified complaint and his Declaration in Support of his Opposition to Summary Judgment.  Verified oppositions constitute opposing affidavits for purposes of summary judgment.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

Here, the relatively benign threat, the degree of force and the extent of injuries alleged by Plaintiff are sufficient to create a genuine issue of disputed fact as to whether Defendant Harris violated the Eighth Amendment.  "'Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir.2005) (quoting Santos v. Gates, 287 F.3d 836, 853 (9th Cir.2002)).

Accordingly, the Court finds that Defendant is not entitled to summary judgment.

B.    Qualified Immunity

Defendant also contends that he is entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The other inquiry is whether the right was clearly established.  Saucier, 533 U.S. at 201.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  In resolving these issues, the court must

view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Court finds that Defendant is not entitled to qualified immunity. Taken in the light most favorable to Plaintiff, the facts indicate a violation of Plaintiff's rights under the Eighth Amendment, as stated above. Such rights were clearly established at the time of the incident. See, e.g., Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

## V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment, filed October 19, 2012, be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 9, 2013**                              /s/ *Dennis L. Beck*
                                              UNITED STATES MAGISTRATE JUDGE