# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. EMERY,<br><br>            Plaintiff,<br><br>     v.<br><br>HARRIS,<br><br>            Defendant. | 1:10-cv-01947-JLT (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REOPEN DISCOVERY<br><br>(Doc. 82) |

**I. Background**

Plaintiff Steven C. Emery ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 18, 2010. This action is proceeding on Plaintiff's claim that Defendant Michael Harris used excessive force against him in violation of the Eighth Amendment of the United States Constitution. Discovery closed in this case on May 13, 2012. (Doc. 14.) Trial is set to begin on February 25, 2014. (Doc. 86.)

On December 27, 2013, Plaintiff filed a motion for limited discovery. (Doc. 82.) That same date, the parties submitted a stipulation and proposed order for shortening time on Plaintiff's motion. (Doc. 81.) Defendant filed his opposition, in accordance with the stipulation, on January 7, 2014. (Doc. 94.) The Court heard the motion on January 14, 2014.

1

## II. Plaintiff's Motion[1]

In this motion, Plaintiff seeks leave to conduct additional discovery. In particular, he seeks time to propound discovery to obtain:

(1) A video of the area where the incident occurred and on the date of the incident which was purportedly taken from a camera positioned atop a nearby pole;

(2) Documents or reports related to claims Defendant has used excessive force in the past and a copy of the "Executive Use of Force Review" related to the events involving Plaintiff;

(3) A "package list" that Plaintiff claims was posted on the date of the incident; and

(4) Leave to disclose an expert witness who will testify about "the use of force by prison guards and general prison policies and procedures."

### A. Standards[2]

#### 1. Reopening Discovery

The discovery cut-off date of May 13, 2012, was set forth in the Discovery and Scheduling Order. (Doc. 14.) Modification of the Court's scheduling order to allow further discovery requires a showing of good cause, Fed.R.Civ.P. 16(b)(4), and good cause requires a showing of due diligence, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of the order. *Id*. The court may also consider the prejudice to the party opposing the modification. *Id*. If the party seeking to amend the scheduling order fails to show due diligence the inquiry should end and the court should not grant the motion to modify. *Zivkovic v. Southern California Edison, Co*., 302 F.3d 1080, 1087 (9th Cir. 2002).

Originally, on November 28, 2011, Plaintiff sought a subpoena to be issued by the Court related to a video he claimed was taken of the area where and when the incident occurred. (Doc.

---

[1] All pagination references are to those applied by CM/ECF located in the top right-hand corner of the document.

[2] Though Plaintiff's motion is peppered with spoliation nuances, he has not made sufficient showing for any such finding to be made at this time. Further, while SATF may have obligations to preserve evidence when subsequent litigation is likely, SATF nor CDCR are parties in this action. Plaintiff cites no authority, and the Court finds none, to show that obligation flows to an individual correctional officer where such is not among his or her job duties.

16) A previously assigned Magistrate Judge declined to issue the subpoena until Plaintiff demonstrated that Defendant did not have the video in his possession or control. (Doc. 17)

On April 23, 2012, Plaintiff filed a motion to compel Defendant to produce the video and argued that because Defendant produced other photographs related to the incident, this demonstrated Defendant had control over the video he sought.[3] (Doc. 18 at 9) Defendant opposed the motion and provided a copy of a subpoena he issued to SATF for production of documents including "All videotapes, audiotapes, and/or photographs taken at the time of and following the incident occurring on or about June 14, 2007, which is the subject of this lawsuit." (Doc. 19-2 at 5-6) When SATF responded to the subpoena, Defendant produced everything received from SATF to Plaintiff. (Doc. 19-1 at 2-3) These materials did not include the video plaintiff requested. (Doc. 19-1 at 3) Defendant explained that this subpoena, rather than his employment with CDCR, is what generated Defendant's access to the materials. (Doc. 19-1 at 2-3)

On July 12, 2012, the Court denied the motion to compel finding, "This court cannot compel Defendants to produce documents that do not exist or are not in their possession or control. See Fed. R. Civ. P. 34(a)(1). See also *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (a party seeking production of documents bears the burden of showing the opposing party has control over them)." (Doc. 23 at 2)  Despite that this finding would have allowed Plaintiff to re-apply for a subpoena to issue to SATF, Plaintiff did not do so.[4] It is against this backdrop that the Court considers the current motion.

**B. Topics on which discovery is sought**

**1. Surveillance Video**

Plaintiff asserts that there is little or no dispute that: there was a camera mounted atop a building in Facility E at SATF that may have captured the incident; that Plaintiff has been diligent in trying to acquire this videotape since this lawsuit was filed; and that if this videotape still exists

---

[3] By this time, Defendant had produced a different video but Plaintiff complained that this video was not responsive to the particular discovery request at issue. (Doc. 18 at 9)

[4] It is clear Plaintiff understood that he could do so. In his motion, Plaintiff notes, "Defendant asserts that plaintiff should direct this Request to the records custodian of CDCR, presumably via subpoena dices tecum . . . This option is not yet available as this court has ordered that no such subpoena will be issued unless and until it rules the requested materials discoverable and determines that defendant does not have care, custody and control of them." (Doc. 18 at 9-10)

3

1    it would likely answer the only material factual dispute in this case—what happened after
2    Defendant instructed Plaintiff to cuff up, including who threw the first punch. (Doc. 82, p. 9.)
3    Plaintiff seeks both leave to subpoena the custodian of records at SATF for a deposition on the
4    preservation policies of SATF and production of the videotape and that Defendant and/or CDCR
5    be compelled to produce the videotape. (*Id.*)

6    Defendant counters that he, as an individual, had no duty to preserve the surveillance
7    video and did not know it constituted important information.[5] (Doc. 94, 6:23-7:10.) Further,
8    Defendant submitted a declaration from Lt. L. Cartagena stating that the video was deemed
9    unimportant by SATF officials, was not listed on the incident report, did not cover the area of the
10   incident; and that surveillance tapes are "automatically looped over approximately every three
11   days." (*Id.*; quoting Doc. 94-2, Cartagena Decl. ¶¶ 2, 3, 5.)

12   On the other hand, Plaintiff fails to explain why he did not seek to obtain the video via
13   subpoena once his motion to compel, described above, was denied. Had he done this, the issue
14   would have long ago been put to rest. His failure to act at that time militates against a finding of
15   diligence which is needed to justify reopening discovery.

16   Moreover, the declaration provided by Defendant establishes sufficiently that the
17   surveillance video no longer exists and, even if it did exist, would not have shown the area where
18   the incident in question in this action took place. Plaintiff makes no showing to counter this
19   evidence.[6] Thus, Plaintiff's motion permit additional discovery out of time related to the
20   surveillance video of Facility E's yard is **DENIED**.[7]

21   **2. "Package List"**

22   Plaintiff seeks addition discovery to obtain production by Defendant (or CDCR) of the

---

[5] The suggestion that Defendant should have known this due to Plaintiff's claims he made on the day of the event in which he threatened to sue and the fact that the CDCR sought to impose criminal sanction for Plaintiff's role in the events, does not convince the Court Defendant had an obligation—or the ability—to preserve the video tape.

[6] At the hearing, counsel reported that Plaintiff could provide a declaration that demonstrates the camera is located in the area where the events occurred. Even assuming Plaintiff can establish foundation for this statement, the time to present this declaration was with the motion not at some point after it is heard.

[7] This does not preclude Plaintiff from subpoenaing the video for production at trial. If Plaintiff chooses to proceed in this fashion and the video is not produced, no discussion related to the failure to produce the video, spoliation or related topics will be permitted in the presence of the jury unless and until these issues are raised to the Court and the Court grants permission to raise these topics in front of the jury.

1  "package list" that he asserts was once contained in his CDCR central file.  (Doc. 82, 13:19-24;
2  Doc. 82-1, Wiener Decl. Ex. 18, at 3.)  He argues that constitutes a list of inmates who were on
3  the yard at the time of the incident and likely in close proximity to it.  Id. Plaintiff claims the list
4  was available at one time and was attached to the Rules Violation Report on this incident.  Id.

5  Defendant submitted evidence that he did not know the surveillance video or "package
6  list" constituted important information and that it related purely to inmate mail with no obvious
7  correlation to the incident.  (Doc. 94, 6:23-7:10; Doc. 94-1, Nield Decl. Ex. A, Plntf's Depo.
8  Transc., May 9, 2012 at 16:11-14.)  Defense counsel also submitted a declaration that she was
9  informed by officials at SATF that the "package list" likely no longer exists, but if it does, it
10 would be in the prison's archived records and would take several months and a significant amount
11 of effort to find.  (Doc. 94-1, Nield Decl., ¶ 4.)

12 Neither party appears to dispute that Plaintiff was on the list as having a package waiting
13 on the date of the incident.  It appears that Plaintiff's reason for seeking production of the
14 "package list" is solely to attempt to identify persons who may have witnessed the incident and/or
15 to attempt to show that Plaintiff's central file has been tampered with.  It is far too late in this
16 action to identify individuals for interview to ascertain whether they witnessed the events at issue
17 in this action.  Moreover, the package list was posted for two months and lists only those who had
18 a package to collect; it did not determine when a package was to be collected by the recipient.
19 Given this, it poses only a minute likelihood of identifying a witness to the event.  Moreover, to
20 do this would take extraordinary effort.  Presumably each of those identified on the package list
21 would have to be interviewed as to when they retrieved their package and to do this, each would
22 have to be located.  Given the events at issue occurred six and a half years ago, the Court has no
23 confidence this list will yield any useful information.  Thus, Plaintiff's motion to reopen discovery
24 to obtain production of the "package list" is **DENIED**.

25 **3. Defendant's Personnel file; Documents re Prior Allegations of Excessive**
26 **Force; & Executive Use of Force Review Committee Report**

27 Plaintiff "seeks leave to subpoena Defendant and/or CDCR for the production of any
28 document or report contained in Defendant's personnel file relating to prior excessive force

5

allegations against Defendant; any disciplinary reports or history regarding use of force against inmates; and any sanctions, demotions, terminations, or other negative employment actions against Defendant resulting from his use of force against an inmate or otherwise, wherever such record might be contained, including his disciplinary record" with private information redacted. (Doc. 82, 12:10-13:15.)  Plaintiff also seeks production of the Executive Use of Force Review committee report for the incident, including any analysis, opinion, or record thereto; or production of the records custodian if it is represented that these documents no longer exist.  (*Id.*, at 13:25-14:3.)  Plaintiff explains the Executive Use of Force Review "is an investigative document generated by CDCR whenever force is used by a correctional officer against an inmate."[8]  (Doc. 82 at 14)

Notably, Plaintiff propounded discovery on Defendant seeking production of "Any and all documents generated by CDCR staff which refer or relate to [defendant's] use of force against plaintiff on June 14, 2007."  (Doc. 18 at 21-22)  Plaintiff clarified "This request includes, but is not limited to, the following: CDCR Form 837, Crime/Incident Report; CDCR 3010 Incident Commander's Review/Critiqe [sic] Use of Force Incidents; CDCR form 3011 First Level Manager Review; CDCR form 3012 Second Level Manager Review; CDCR 3034 form IERC Allegation Review; CDCR 3036 IERC Critique and Qualitative Evaluation; CDCR for [sic] 3035 IERC Use of Force Review & Further Action Recommendation; CDCR form 3013 Inmate Interview Form; CDCR form 3014 Inmate Interview Findings Report; CDCR 7219 Medical Report of Injury or Unusual Occurrence; CDC for [sic] 115 Rule Violation Report." Id.  When Defendant refused to produce documents, Plaintiff moved to compel production.  (Doc. 18)  Defendant opposed the motion and asserted that everything had been produced and there was nothing more he had that could be produced.  As noted above, the Court considered the motion and denied it by finding Defendant had adequately demonstrated that he did not have control over these documents. (Doc. 23 at 2)

---

[8] In light of the production of the incident reports which identified witnesses to the altercation, the Court was not provided a satisfactory explanation why this additional report was needed.  The suggestion that the determination of the committee would be probative of whether an excessive amount of force was used, is not well-taken.  This ultimate question is one for the jury.

Given that this discovery has been propounded already and a motion to compel production of the documents was denied, Plaintiff has failed to demonstrate that this seeking this information is a sufficient basis to reopen discovery at this time.[9]

### 4. Expert Witness

Plaintiff seeks leave to retain a former senior ranking CDCR official to testify regarding use of force by correctional officers and general prison policies and procedures as an expert witness in this case. (Doc. 82, 14:6-23.) Plaintiff premises his request for leave to retain an expert witness on Plaintiff's prior pro se status and inability to review the video produced by Defendant. (*Id.*)

As noted above, however, Plaintiff was fully aware of what the video depicted at least by the time he filed his motion to compel on April 23, 2012. (Doc. 18 at 9)  In his motion to compel, he complains that the video that was produced was not responsive to the discovery request which sought video of the incident.  Id.

Though the Court cannot square his current position that he could not view the video with his prior motion in which he claimed that the video produced was not video of the incident, Plaintiff fails to explain why he delayed so significantly (from December of 2011 until November of 2013) in advising the Court and/or defense counsel that he was unable to view the video so as to justify retention of an expert witness at this late date.

Furthermore, the Court is at a loss to understand why the delay in viewing the video gives rise to a need for appointment of an expert.  Further, an expert witness as to "general prison policies and procedures" is not likely to provide evidence that is relevant to whether Defendant used excessive force on Plaintiff on the date of the incident so as to justify the expense and delay that such retention would likely cause so close to the trial of this matter.

Plaintiff has failed to adequately describe the topics on which the expert would opine or explain why this evidence is needed in light of the narrow issues raised by his complaint.  F.R.E. 702.  For example, counsel suggested at the hearing that the expert would opine whether the use

---

[9] Moreover, if Plaintiff intended this current motion to be a motion for reconsideration, he has failed to demonstrate that the motion is timely or any basis upon which reconsideration may be granted.  *School District 1J, Multnomah County v. AC and S, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994); L.R. 230(j).

7

of force was compliant with CDCR policies.  However, whether the force used was compliant with a policy is not determinative or even probative of whether Defendant violated the Constitution. *See Lovell v. Poway Unified Sch. Dist.,* 90 F.3d 367, 370 (9th Cir.1996) ["To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."].

Further, Plaintiff will not be unduly prejudiced by not having an expert witness given Defendant did not list any experts to testify in this matter either.  Allowing Plaintiff to retain an expert witness at this late date would clearly cause Defendant prejudice and would impact the trial date.  Thus, to the extent that Plaintiff's motion seeks to reopen discovery for the purpose of disclosing an expert witness, the motion is **DENIED.**

**ORDER**

Based upon the foregoing, Plaintiff's motion to reopen discovery (Doc. 82) is **DENIED**.

IT IS SO ORDERED.

Dated:   **January 16, 2014**                    /s/ Jennifer L. Thurston
                                                 UNITED STATES MAGISTRATE JUDGE