1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT
9                              EASTERN DISTRICT OF CALIFORNIA
10
11  STEVEN C. EMERY,                    ) Case No.: 1:10-cv-01947-JLT (PC)
                                        )
12              Plaintiff,              ) **ORDER ON MOTIONS IN LIMINE**
                                        )
13       v.                             ) (Docs. 97, 98, 99)
                                        )
14  MICHAEL HARRIS,                     )
                                        )
15              Defendant.              )
                                        )
16

17       Before the Court are the motions in limine filed by Plaintiff and Defendant. (Docs. 97, 98, 99.)
18  Each motion is addressed below.[1]

### I. Background

20       Plaintiff Steven C. Emery ("Plaintiff"), a state prisoner proceeding pro se and in forma
21  pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 18, 2010. Plaintiff
22  claims that he was subjected to excessive force when Defendant Harris physically attacked him.
23  Officer Harris denies that he used excessive force and claims he was required to use force due to
24  Plaintiff's combativeness and refusal to comply with lawful orders.

### II. Legal Standards

26       "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted). Likewise, the Seventh Circuit found motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

However, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). On such topics, a court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

**III.     Plaintiff's Motion in Limine**

**A.  Motion to exclude Plaintiff's prior criminal record and history.[2]**

Plaintiff argues Defendant should be precluded from introducing any evidence or argument regarding, or making any reference to, the details of Plaintiff's criminal history—including accusations, charges, and convictions for the purposes of showing Plaintiff's supposed bad character. (Doc. 98, P's MILs, 3:4-8.) Plaintiff further argues that while evidence of a conviction may be introduced for impeachment purposes, the prejudicial effect of Plaintiff's convictions outweigh their probative value in this case, and so all such references should be prohibited. (*Id.*, at 3:8-4:21.) Plaintiff requests that Defendant only be allowed to introduce evidence that Plaintiff was convicted of a crime for purposes of impeachment, but that Defendant be excluded from presenting any evidence or argument mentioning details of Plaintiff's past convictions, including the types of crimes for which he was convicted. (*Id.*, at 4:21-24.) In his opposition to Defendant's MILs, Plaintiff argues that Defendant's arguments on this topic show his intent to use evidence of Plaintiff's felony convictions to improperly attack Plaintiff's character. (Doc. 104, P's Opp. to D's MILs, 18:17-19:16.)

In his MILs, Defendant requests to be allowed to introduce evidence of all of Plaintiff's felony

---

[2] Defendant's request to include evidence of Plaintiff's prior convictions is addressed herein. (*See* Doc. 97, D's MILs, 12:1-13:18.)

1  convictions to impeach Plaintiff's credibility at trial.  (Doc. 97, D's MILs. 12:3-11.) Defendant argues
2  that the impeachment value of Plaintiff's convictions is high, the crimes are probative of the central
3  issues in this case (Plaintiff's violent nature and veracity), Plaintiff's testimony is very important to his
4  case and proving his claims, and Plaintiff's credibility is central to this trial.  (*Id.*, at 12:3-13:18.)  In
5  his opposition to Plaintiff's MILs, Defendant offers to agree to exclude the details and names of
6  Plaintiff's past convictions, but to be allowed to introduce evidence to show that Plaintiff is a
7  convicted felon, the number and dates of Plaintiff's felony convictions, and the starting date of
8  Plaintiff's current incarceration.  (Doc. 103, D's Opp to P's MILs, 2:13-18.)

9        Whether evidence of a conviction will be admitted is governed by Federal Rules of Evidence
10 609.  Evidence must be admitted, pursuant to Fed. R. Evid. ("Rule") 403 in civil cases in which the
11 witness is not the defendant and where the conviction was punishable by more than one year in prison.
12 Fed. R. Evid. 609(a)(1)(A).  Generally, a conviction will not be admitted if more than 10 years have
13 passed since the time the witness was released from confinement on the charge.  However, the 10-year
14 presumptive bar does not apply if the witness remains in custody for the charge at issue.  Nevertheless,
15 in either situation, a conviction may not be admitted if its probative value is outweighed by its
16 prejudicial effect.  Fed. R. Evid. 609(b).

17       Given that the credibility of all the parties and witnesses is a significant issue in the case, the
18 Court does not find the prejudicial effect posed entirely outweighs the probative value regarding
19 Plaintiff's convictions.  Accordingly, Defendant may only introduce evidence that Plaintiff is a
20 convicted felon and such evidence will be admitted for the limited purpose of impeachment.  The date,
21 name, nature, or number of felonies shall not be introduced.

22       **B.  Motion to exclude Plaintiff's prison disciplinary history.**

23       Plaintiff argues that Defendant should be precluded from introducing any evidence or arguing
24 that Plaintiff has been accused of, written up for, or found to have violated any prison rules or
25 regulations—including Plaintiff's refusal to accept a cellmate of another race and Plaintiff's
26 assignment to AdSeg as punishment for violating prison rules.  (Doc. 98, P's MILs, 5:1-11.)  Plaintiff
27 argues his prison disciplinary history should be excluded under Rule 404(b)(1) as improper character
28 evidence and irrelevant unless Defendant first shows that the information bore on his decision to use

1  force. (*Id.*, at 5:11-28.) Plaintiff further argues that Defendant submitted evidence in support of his
2  motion for summary judgment that it was when Plaintiff took a swing at Defendant that caused
3  Defendant to utilize force on Plaintiff (i.e. that Defendant used force because Plaintiff swung at him,
4  not because of any previous rules violations). (*Id.*, at 5:24-6:10.) Plaintiff also argues that allowing
5  such evidence as support for the amount of force Defendant chose to use on Plaintiff is substantially
6  outweighed by a danger of unfair prejudice to Plaintiff. (*Id.*, at 6:11-28.) Further, Plaintiff argues that
7  he refused to be celled with non-white inmates for religious reasons, which he argues is borne out by
8  his nonviolent response to non-white cellmates and the guards who responded to his cellmate refusals.
9  (*Id.*) Plaintiff closes this section of argument by citing *Jackson v. Eichenberger*, No. CIV S-08-1753
10 WBS EFB P, 2012 U.S. Dist. LEXIS 1091, at *21 (E.D. Cal. Jan. 4, 2012), which recognized that
11 allegations of white supremacy or racism are "inherently prejudicial." (*Id.*, at 6:25-28.)
12     In opposition, Defendant argues that since he helped transport Plaintiff to Ad-Seg for
13 punishment both times, he knew Plaintiff had twice refused to be housed with non-white cellmates
14 (one African American, and one Indian). (*Id.*, at 3:8-18.) Defendant, who is African American,
15 argues that these instances gave him the impression that Plaintiff was hateful toward black people and
16 that this belief significantly enhanced the threat he felt from Plaintiff's actions. (*Id.*, at 3:19-26.)
17 Defendant argues that Plaintiff's disciplinary record is a fact leading up to incident which weighed in
18 his decision to use force on Plaintiff and that Plaintiff's punch was not the sole source of trepidation.
19 (*Id.*, at 4:1-28.)
20     The threat Defendant reasonably perceived, if any, from the two times which Plaintiff refused
21 to be celled with non-white inmates during the incident in question in this case is highly relevant to the
22 determination of whether Defendant used excessive force. However, does not dispute that Plaintiff's
23 reaction to those non-white inmates and guards responding to his refusal to be celled with them was
24 for religious reasons and was not violent. Defendant also does not submit any evidence to show that
25 Plaintiff was violent toward him during his transport of Plaintiff to Ad-Seg after either incident where
26 he refused to be celled with non-white inmates. Further, Defendant provides precious little
27 information as to why Plaintiff's non-violent refusal to be celled with non-white inmaets made him
28 feel threatened by Plaintiff let alone explain how he formed a *reasonable* belief Plaintiff posed a

4

threat. Accordingly, the motion is **GRANTED**.

### C. Motion to exclude allegations that Plaintiff is a white supremacist.[3]

Plaintiff seeks to exclude Defendant from submitting any evidence or arguments that Plaintiff is a white-supremacist, arguing that such references are false, irrelevant, and an attempt to distract the jury from the factual dispute with highly prejudicial information. (Doc. 98, P's MILs, 7:1-15.) Plaintiff argues that Defendant makes a spurious leap from Plaintiff's refusal to be housed with two non-white inmates, to a belief that Plaintiff is a white supremacist with racially motivated violent tendencies, without any evidence to support his conclusion. (*Id.*, at 7:15-8:19.) Plaintiff also argues that it would be improper to allow Defendant to argue that his knowledge of Plaintiff's religious beliefs led to an understanding that Plaintiff was a violent white supremacist and that the probative value of any and all such unsupported extrapolations is vastly outweighed by their prejudicial effect. (*Id.*, at 8:20-921.) In his opposition, Plaintiff also argues that Defendant had no basis for believing Plaintiff posed a threat to his safety as Defendant has failed to link Plaintiff's refusal to be celled with non-white inmates and his Odinist religion to any acts of violence by Plaintiff. (Doc. 104, P's Opp. to D's MILs, at 12:2-13:9.) Plaintiff requests that, if Defendant is allowed to introduce evidence or arguments on his belief of Plaintiff being a white supremacist, that Plaintiff be allowed to offer rebuttal testimony. (*Id.*, at 13:10-24.)

Defendant seeks to be allowed to introduce evidence regarding his impression of Plaintiff's religious beliefs and racist views (Doc. 103, D's Opp. to P's MILs, 5:1-17), but requests that Plaintiff be excluded from presenting witnesses related thereto (Doc. 97, D's MILs, 7:11-8:13). Defendant asserts that he does not intend to argue that Plaintiff is a white supremacist; rather he intends to show that, after the two times Plaintiff refused to be celled with non-whites, another officer told him Plaintiff was a devout Odinist, he understood Odinism to be a common religion among white supremacists in prison, and this caused him to fear for his safety at the time of the incident. (Doc. 103, at 5:1-9.) Defendant argues that his subjective impression of the threat presented by Plaintiff is the only impression that dictates the relevance of this evidence. (*Id.*, at 5:8-18; Doc. 97, at 7:11-8:13.)

---

[3] Defendant's request to exclude Plaintiff's witnesses related to his racism or religious beliefs is addressed herein. (*See* Doc. 97, D's MILs, 7:11-8:13.)

Defendant asserts that his understanding is that Plaintiff followed the Odinist religion and that the Odinist religion promotes white supremacy, and that Plaintiff confirmed this in his deposition when he testified that Odinists believe that minorities "desecrate [their] hallowed area." (Doc. 97, 7:24-28.) Defendant argues that his perception of the threat posed by Plaintiff was affected by Plaintiff's "apparent demonstrations of racism" (in refusing to be celled with non-white inmates) before the incident. (*Id.*, at 7:28-8:2.) Defendant argues that the testimony Plaintiff seeks to elicit from inmate witnesses on their perceptions of Plaintiff after the incident is irrelevant to Defendant's subjective impression. (*Id.*, at 8:3-10.) Defendant extends this argument to the extreme of stating "whether or not Plaintiff actually harbors racist views is immaterial." (*Id.*, at 8:7-10.)

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat *reasonably perceived* by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (emphasis added) (internal quotation marks and citations omitted). Defendant's twice helping move Plaintiff to Ad-Seg after he refused to cell with non-white inmates, another officer advising him that Plaintiff was Odinist, and his own understanding that Odinism is a common religion among with supremacists in prison does not provide basis to show that it was reasonable for him to perceive Plaintiff as a violent racist threat.

Accordingly, the motions are **GRANTED** and both parties are precluded from entering evidence or arguments of Plaintiff's religious beliefs or that Plaintiff is a white-supremacist.

**D. Motion to exclude whether damages awarded to Plaintiff will be paid with state finances or taxpayer funds.**

Plaintiff requests that Defendant be precluded from making any statements about the State of California's finances, taxpayers paying a judgment, or how much it would cost the state if every prisoner with a grievance received payment, citing Rules 402 and 403. (Doc. 98, P's MILs, 9:22-10:4.) Defendant does not oppose this motion. (Doc. 103, D's Opp. to P's MILs, 5:18-19.)

6

1 Accordingly, the motion is **GRANTED**.

### E. Motion to permit Plaintiff to attend trial without handcuffs, unshackled, and in civilian clothing during all stages of the proceedings when the jury may see him.[4]

Citing Rules 401 and 403, Plaintiff requests that he remain unshackled and unhandcuffed while in the jury's presence because such restraints would unfairly prejudice the jury against him and suggest that he has violent tendencies that do not exist. (Doc. 98, P's MILs, 10:5-28.) Plaintiff also requests that he be allowed to wear a suit or other appropriate civilian attire while in the jury's presence. (*Id.*)

Defendant requests that Plaintiff be shackled at trial, arguing that he presents a significant threat to anyone in the courtroom as he is a career criminal who has spent most of his adult life in prison, has a history of in custody disciplinary offenses including battery on a police officer and several refusals to follow the orders of his superiors, has a demonstrated history of violence, unlawfulness, and an inability to conform to the rules of a sophisticated society. (Doc. 97, D's MILs, 11:11-28.) Defendant presents neither opposition to the request regarding, nor moves to restrict Plaintiff's attire.

Accordingly, Plaintiff will be permitted to remain at counsel table with his hands unshackled as long as his conduct warrants it. His legs will be shackled in the manner approved by the USMS but they will be concealed behind the skirt of the table so as not to be visible to the jury. Further, Plaintiff will be permitted to wear civilian clothing at trial, though neither the Court nor Defendant's counsel shall be responsible for providing the civilian clothing. Plaintiff's counsel shall contact the U.S. Marshal Service in advance of trial for instructions regarding allowable clothing and for details as to when and how the clothing must be provided. Thus, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED**.

### IV. Defendant's Motion in Limine

#### A. Motion to exclude irrelevant and prejudicial information.

Defendant's first motion in limine does not identify any evidence and/or arguments sought to be excluded and/or precluded. (Doc. 97, D's MILs, 1:23-2:23.) Rather, Defendant states the

---

[4] Defendant's request that Plaintiff be shackled at trial is addressed herein. (*See* Doc. 97, D's MILs, 11:11-28.)

applicable law for admissibility of relevant evidence and the weighing to be done where prejudicial information is presented.  Thus, the Court **DISREGARDS** the motion.

  **B.** **Motion to exclude evidence regarding the CDCR's defense and indemnification of Defendant.**

  Defendant seeks a motion in limine to exclude evidence regarding the CDCR's defense and indemnification of Defendant.  (Doc. 97, D's MILs, 2:24-3:5.)  Plaintiff does not oppose this motion as long as his motion in limine regarding state finances and taxpayer funds is granted.  (Doc. 104, P's Opp. to D's MILs, 2:3-9.)  Accordingly, the motion is **GRANTED.**

  **C.** **Motion to exclude evidence related to the existence or destruction of a surveillance tape capturing the altercation.**

  Defendant argues that he will be prejudiced if any testimony is allowed regarding a surveillance video that may have captured the altercation between Plaintiff and Defendant as he is likely to be portrayed as the destroyer of the video even though he had neither knowledge of its import to this action, nor ability to keep it from being reused in standard course.  (Doc. 97, D's MILs, 3:6-4:4.)  Plaintiff counters that this motion is premature because, as outlined in this Court's order denying Plaintiff's motion to reopen discovery (Doc. 101), there are open issues to be addressed before such a decision can be made, including ruling on a spoliation motion which he intends to file.  (Doc. 104, P's Opp. to D's MILs, 2:10-5:23.)

  It was noted in this Court's order denying Plaintiff's motion to reopen discovery that Plaintiff was not precluded "from subpoenaing the video for production at trial.  If Plaintiff chooses to proceed in this fashion and the video is not produced, no discussion related to the failure to produce the video, spoliation or related topics will be permitted in the presence of the jury unless and until these issues are raised to the Court and the Court grants permission to raise these topics in front of the jury."  (Doc. 101, O deny Reopen Disc., 3:21-4:20, fn. 7.)

  Accordingly, a ruling regarding excluding evidence related to the existence or destruction of a surveillance tape capturing the altercation is reserved.

  **D.** **Motion to exclude evidence related to the existence or destruction of a package list.**

  Defendant argues that the package list which Plaintiff has sought in this action is irrelevant and

1  that Plaintiff's theory that Defendant destroyed the list in an effort to withhold the names of potential

2  witnesses is purely speculative. (Doc. 97, D's MILs, 4:5-14.) Defendant argues that the probative

3  value of the list is too speculative to be relevant as, at best, it names inmates who might have been

4  somewhere in the area at the time of the incident; he had no way to know it was important;

5  Defendant's attorneys could not have obtained a copy of it since they were retained a year and a half

6  after the incident and all such lists are only preserved for a year; and even if Defendant had access to

7  the list, Plaintiff fails to demonstrate that he had any duty to preserve it. (*Id.*, at 4:15-28.) Defendant

8  argues that allowing Plaintiff to reference a list which no longer exists places him in a negative light.

9  (*Id.*, at 5:1-5.)

10  Plaintiff counters that he is not speculating that the package list would have the names of

11  potential witnesses as he was present and saw a number of individuals who were also there to pick up

12  packages; inmates in that facility had been on lock down and the date of the altercation was the first

13  opportunity for any of them to pick up their packages, which most did; that it was not "some stand-

14  alone document buried" in Plaintiff's C-File, but rather was attached to and referenced in the Rules

15  Violation Report filed against Plaintiff and was noted as having been used by SATF staff to identify

16  potential witnesses to the incident. (Doc. 104, P's Opp. to D's MILs, 5:24-6:20.) Plaintiff also cites a

17  number of cases and argues that Defendant had a duty to preserve the package list. (*Id.*, at 6:21-7:17.)

18  However, Plaintiff indicates his intent to file a spoliation motion regarding the package list.

19  Accordingly, a ruling regarding excluding evidence related to the existence or destruction of a package

20  list from the date of the altercation is reserved.

21  **E.     Motion to exclude Plaintiff's medical conclusions since he is a lay witness.**

22  Defendant seeks to exclude any attempt by Plaintiff to offer medical conclusions through his

23  own testimony as improper and inadmissible. (Doc. 97, D's MILS, 5:6-6:10.) Plaintiff does not

24  oppose this motion to the extent that it prohibits him from opining beyond his perceptions as to what

25  he felt and observed related to his injuries and requests that this standard be employed as to all non-

26  expert witnesses. (Doc. 104, P's Opp. to D's MILs, 7:18-8:13.)

27  Rule 701 provides that lay witnesses may only testify about those items "rationally based on

28  the perception of the witness," and "not based on scientific, technical, or other specialized knowledge."

1  This is the standard for all lay witnesses.  However, because Defendant has failed to detail the
2  expected testimony from witnesses other than Plaintiff, rulings as to these witnesses will be addressed
3  during the trial after upon objections being made.  As to Plaintiff's testimony, the motion is
4  **GRANTED**.

      **F.**      **Motion to exclude evidence of unrelated injuries.**

Defendant seeks to exclude evidence of Plaintiff's "unrelated" injuries as irrelevant, arguing that Plaintiff cannot prove that Defendant inflicted the blows that caused Plaintiff's injuries. (Doc. 97, D's MILs, 6:11-7:10.)  Plaintiff essentially counters that the injuries Plaintiff sustained in the altercation are not "unrelated" and that Defendant is liable even for wounds that he did not personally inflict since his actions initiated the chain of events that caused other officers to become involved so as to result in Plaintiff being injured. (Doc. 104, P's Opp. to D's MILs, 8:14-12:1.)

"Direct, personal participation is not necessary to establish liability for a constitutional violation." *Wong v. United States*, 373 F3d 952, 966 (9th Cir. 2004).  "'The requisite causal connection can be established . . . also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)); *see also White v. Roper*, 901 F.2d 1501, 1505-06 (9th Cir. 19901).  "The critical question is whether it was reasonably foreseeable that the actions of the particular . . . defendants would lead to the rights violations alleged to have occurred . . . ." *Id.*

As a correctional officer, it is foreseeable that, engaging in an altercation with an inmate will cause other officers to engage in the altercation as well.  It is further foreseeable that, in an altercation with multiple correctional officers, an inmate will likely sustain various physical injuries.  Here, Plaintiff alleges Defendant attacked him without any justification and that, as a result, other officers joined in the use of force.  If found true, Defendant may be found liable for the entirety of injuries Plaintiff suffered.  If, on the other hand, there was an intervening event which cut-off the causal connection or if Plaintiff's version of the events is not credited by the jury, he may not be held liable. Thus, the Court cannot conclude that evidence of all of the injuries Plaintiff claims he suffered during

his altercation are not pertinent to the jury's determinations..[5] Accordingly, Defendant's motion to exclude evidence of unrelated injuries is **DENIED**.

### G. Motion to exclude third party testimony related to the legitimacy of Defendant's denial of Plaintiff's package.

Plaintiff does not oppose Defendant's request to exclude testimony related to the legitimacy of Defendant's denial of Plaintiff's package. (Doc. 97, D's MILs, 8:14-23;Doc. 104, P's Opp. to D's MILs, 13:25-28.) Accordingly, this motion in limine is **GRANTED**.

### H. Motion to exclude testimony from Inmate Greenhaw.

Defendant moves to exclude the testimony of Inmate Geenhaw arguing that Plaintiff has not produced any evidence to suggest that Mr. Greenhaw has any personal knowledge about the case and so is irrelevant. (Doc. 97, D's MILs, 8:24-28.) Plaintiff initially opposed this motion, indicating that Plaintiff's counsel was in the process of contacting Mr. Greenhaw to ascertain his knowledge, or lack thereof, regarding the incident. (Doc. 104, P's Opp. to D's MILs, 14:1-11.) However, Mr. Greenhaw recently filed a statement that he refused to testify or to be involved in this action in any way. (Doc. 105.) Subsequently, Plaintiff filed a notice withdrawing Mr. Greenhaw from the witness list. (Doc. 106.) Accordingly, Defendant's motion to exclude testimony from Inmate Greenhaw is **GRANTED**.

### I. Motion to exclude evidence regarding Defendant's prior conduct.

Defendant seeks to have all evidence regarding his prior conduct excluded. (Doc. 97, D's MILs, 9:1-17.) In light of the order denying Plaintiff's motion to reopen discovery (Doc. 101), Plaintiff indicates this request should be denied as moot and reserves his right to appeal. (Doc. 104, P's Opp. to D's MILs, 14:12-15.) However, while Plaintiff's motion to reopen discovery was denied, nothing in that order prohibited his subpoenaing documents for production at trial.

Accordingly, ruling on exclusion of evidence regarding Defendant's prior similar conduct is reserved. Exclusion or admission of any such evidence will be made if/when proffered during trial **outside the presence of the jury**.

---

[5] As previously discussed, Plaintiff will be allowed to testify regarding what he felt and experienced following the altercation. However, he will not be allowed to testify as to any medical conditions or their causation which are beyond the experience of a lay person.

11

**J.     Motion to bifurcate liability from damages.**

Defendant seeks a motion in limine bifurcating liability from damages. (Doc. 97, D's MILs, 9:18-11:5.) Plaintiff opposes this motion arguing that liability and damages are inexorably intertwined in this case. (Doc. 104, P's Opp. to D's MILs, 14:16-17:4.)

Bifurcation is not a proper subject for motions in limine; rather it is a topic raised and covered in the pretrial order. In pretrial statements, Defendant sought to bifurcate the issue of punitive damages. (Doc. 57, D's Pre T Stmt., 9:21-25.) The Court ordered bifurcation of punitive damages. (Doc. 96, 2nd Amd. PreT O, 21:7-10.) "If the jury finds that the Defendant is liable for punitive damages, the Court will conduct a second phase of trial on the amount of punitive damages." (*Id.*) It appears that Defendant is attempting to circumvent the standards to amend the pretrial order via this motion in limine, which is not allowed. Further, even if this Court were to entertain this request, Defendant does not identify any specific benefit to be gained from bifurcating liability from general damages and the Court sees none. Accordingly, Defendant's motion in limine to bifurcate liability from damages is **DENIED**.

**K.     Motion to exclude letters from Defendant's attorneys.**

Defendant seeks to exclude letters from counsel that Plaintiff listed as potential exhibits in this case, generally arguing that statements of counsel are not evidence and that the letters are irrelevant. (Doc. 97, D's MILs, 11:6-10.) Plaintiff counters that Defendant does not identify which letters he wants excluded and that statements of counsel can establish facts which are at issue. (Doc. 104, P's Opp. to D's MILs, 17:5-12 & n.12.) Plaintiff correctly further argues that any defense objections (including relevance) to documents identified on Plaintiff's exhibit list not properly raised in limine, but should be filed no later than February 17, 2014 and as specified in the Second Amended Scheduling Order (Doc. 96, 2nd Sch.O, 17:18-19:12).

Accordingly, ruling on Defendant's motion to exclude defense counsel's correspondence is reserved. All document specific objections raised in objections to evidence in the exhibit binders must be filed no later than February 17, 2014, as instructed in the Second Amended Scheduling Order, and will be ruled on accordingly.

///

**ORDER**

The following rulings apply to the motions in limine filed by the parties in this action:

1. Plaintiff's motion in limine #1 is **GRANTED IN PART**;

2. Plaintiff's motion in limine #2 is **GRANTED**;

3. Plaintiff's motion in limine #3 is **GRANTED**;

4. Plaintiff's motion in limine #4 is **GRANTED;**

5. Plaintiff's motion in limine #5 is **GRANTED IN PART** and **DENIED IN PART;**

7. Defendant's motion in limine "I.B." is **GRANTED**;

8. Defendant's motions in limine "I.C." and "I.D." are **RESERVED**;

9. Defendant's motion in limine "I.E." as it relates to Plaintiff's testimony is **GRANTED;** Plaintiff may testify only to what he felt and observed regarding the injuries he claims he suffered during the altercation with Defendant;

10. Defendant's motion in limine "I.F." is **DENIED**. Plaintiff may testify as to injuries he claims he suffered during the altercation with, or as a result of the altercation with, Defendant;

11. Defendant's motion in limine "I.G." is **GRANTED**;

12. Defendant's motion in limine "I.H." is **GRANTED**;

13. Defendant's motion in limine "I.I." is **GRANTED**;

14. Defendant's motion in limine "I.J." is **RESERVED;**

15. Defendant's motion in limine "II" is **DENIED;**

16. Defendant's motion in limine "III" is **RESERVED;**

17. Defendant's motion in limine "IV" is **GRANTED** as set forth above;

18. Defendant's motion in limine "V" is **GRANTED IN PART** as set forth above.

IT IS SO ORDERED.

Dated:   **February 5, 2014**                       **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE