1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11 | STEVEN C. EMERY,

12 |         Plaintiff,

13 |    v.

14 | HARRIS,

15 |         Defendant.

1:10-cv-01947-JLT (PC)

ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION

(Doc. 107)

16

17    Plaintiff Steven C. Emery ("Plaintiff"), a state prisoner proceeding pro se and in forma

18 pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 18, 2010. In his

19 current motion, Plaintiff seeks sanctions for spoliation of evidence.  For the reasons set forth

20 below, the Court **DENIES** the motion.

21 **I.  Background**

22    Plaintiff alleges that on June 14, 2007, he was incarcerated that at SATF in Corcoran,

23 California.  On that day, he went to the Program Office to obtain a package from Defendant.

24 Harris refused to provide the package and a dispute ensued.  Eventually, the two engaged in a

25 physical altercation. Plaintiff seeks damages for the injuries he claims he suffered as a result of

26 the use of excessive force.

27    Plaintiff claims weeks before the June 14, 2007 incident, he noticed that there was a

28 camera placed upon a pole atop of the E-5 building. (Doc. 107-17 at 2)  This building was located

1

on the southerly edge of the E yard and closest to the building where the Program Office was housed and, hence, where the altercation occurred.  Id. Plaintiff claims that he see the camera was pointed north which would have been toward where the altercation occurred.  Id.  Plaintiff claims it did not look to him as if the direction in which the camera was pointed could be remotely controlled and that during his time on the E yard, the camera was "always" pointed on the north direction to capture events occurring outside of the program office.  Id.  Plaintiff claims that the camera was pointed in this direction at the time of the altercation with Defendant.  Id.

After the event, Plaintiff was admitted to the hospital on the grounds of California State Prison Corcoran. In detailing the "History of Present Illness," the medical personnel indicated in part, "Patient was sent here from SATF.  Apparently, there was an incident and an injury occurred while the inmate was in restraints by custody."  (Doc. 107-6 at 2)  Plaintiff was discharged from the hospital on June 18, 2007 and, of pertinence, the "Summary" notes, "The patient stated he had an altercation with the officers . . ." (Doc. 107-7 at 2)

A week after the altercation, on June 21, 2007, Plaintiff wrote to the warden and told him he intended to "persue [sic] legal action against one c/o M. Harris who is an officer on S.A.T.F./SP Corcoran Level 3 E-Yard for the crime of agravated [sic] battery against my person." (Doc. 107-5 at 2)  Plaintiff detailed that during the altercation Harris struck him "in the left ear and jaw and he continued to strike me while I was on the ground and he was on my back he struck me repeatedly in the head and neck areas and I was struck in the lower back by batons wereas [sic] I suffered two broken ribs and some internal bleeding that caused me to be hospitalized for (5) five days."  Id.

On June 22, 2007, Plaintiff was issued a rules violation report and was charged with Battery on a Peace Officer.  (Doc. 107-8 at 2) At his hearing, which occurred on September 22, 2007[1], Plaintiff reported, in essence, that he complied with orders Defendant gave him to "cuff up" but, despite this, Defendant began striking him in the head.  Id. at 5.  Likewise, he denied hitting or kicking Defendant.  Id. at 8.  During the investigation, Plaintiff requested a copy of the

---

[1] The hearing was delayed three months at Plaintiff's request to allow a determination whether the Kings County District Attorney would file criminal charges.  (Doc. 107-8 at 4, 13)

"list of names on the package list of 6/14/07. Id. at 9. The requested information was attached to the RVR which was given to Plaintiff. Id. Ultimately, plaintiff was found guilty of the charge. Id. at 2, 5-6.

On June 30, 2007, Plaintiff filed a grievance related to the incident. (Doc. 107-9 at 32) Plaintiff asserted Harris had verbally abused him and struck him on the face, head, neck and back. Id. Because the matter constituted a staff complaint, the grievance was referred to Internal Affairs. Id. at 29-30.

On December 5, 2007, Plaintiff filed a lawsuit against Defendant in the Kings County Superior Court. (Doc. 107-9 at 2-35) In it, Plaintiff alleged that Harris used excessive force on him despite that he was compliant with instructions to "cuff-up."[2] Id. at 5, 9

On February 17, 2010[3], a Deputy Attorney General notified the Case Records Manager at SATF that "it was imperative" that all of Plaintiff's files, including "his central file and medical records, and other case related documents and evidence be preserved during the pendency of this litigation." (Doc. 107-10 at 2) The instruction clarified that, "Nothing should be removed, destroyed, or purged from these files without conferring with me." Id. In addition, the Records Case Manager was instructed, "Please place this letter in a prominent place within the file to ensure that records personnel remain aware of its provisions." Id.

On October 8, 2010, Plaintiff filed the instant litigation. (Doc. 1 at 12) Attached to the complaint is a letter addressed to the Warden, dated September 18, 2010, in which he notifies the Warden of the impending litigation and requests that the video tape from the camera atop the E-5 building on Facility E, taken on the date of the incident, be preserved. Id. at 10. Plaintiff describes this evidence as "key" to his case. Id.

---

[2] The complaint was dismissed when the demurrer to the third amended complaint was sustained without leave to amend on July 9, 2010.
    The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.). As such, the internet website for the California Courts, containing the court system's records for filings in the Kings County Superior Court is subject to judicial notice.
[3] This was about one week after the defendants filed their answer to the state court action on February 8, 2010. Notably, the Court did not order service of the complaint in this case until February 24, 2011. (Doc. 8)

1    Sometime around April 2011, Plaintiff filed a grievance in which he complained that the

2  package list was no longer contained in his central file.  (Doc. 107-11)  Plaintiff claimed that he

3  had seen the package list in his file before and that it was no longer contained there.  Id.  The

4  investigator reviewed the rules violation report which indicated that the package list was attached

5  and verified that it was not attached.  Id.  Likewise, he reviewed the copy of the report maintained

6  by the Assistant Warden and this report likewise failed to have the package list attached.[4]  Id.

7  Finally, the investigator determined that the package list which had been held at E Facility no

8  longer existed given these lists are kept only for one year.  Id.

9    During discovery, on September 17, 2011, Plaintiff requested Defendant provide a copy of

10  the videotape from the camera he claims was pointed at the Program Office at the time of the

11  incident.  (Doc. 107-12 at 4-5) When the video recording was not produced on April 23, 2012,

12  Plaintiff moved to compel the production.  (Doc. 18 at 9) Defendant opposed the motion and

13  provided a copy of a subpoena he issued to SATF for production of documents including "All

14  videotapes, audiotapes, and/or photographs taken at the time of and following the incident

15  occurring on or about June 14, 2007, which is the subject of this lawsuit." (Doc. 19-2 at 5-6)

16  When SATF responded to the subpoena, Defendant produced everything received from SATF to

17  Plaintiff. (Doc. 19-1 at 2-3) These materials did not include the video plaintiff requested. (Doc.

18  19-1 at 3) Defendant explained that this subpoena, rather than his employment with CDCR, is

19  what generated Defendant's access to the materials. (Doc. 19-1 at 2-3)

20    On July 12, 2012, the Court denied the motion to compel finding, "This court cannot

21  compel Defendants to produce documents that do not exist or are not in their possession or

22  control. See Fed. R. Civ. P. 34(a)(1). See also United States v. Int'l Union of Petroleum & Indus.

23  Workers, 870 F.2d 1450, 1452 (9th Cir. 1989) (a party seeking production of documents bears the

24  burden of showing the opposing party has control over them)." (Doc. 23 at 2)

25    Along with his motion, Plaintiff submits a declaration from Edward Caden who began

26  work with the CDCR in 1977 and worked his way up through the ranks until, in 2004, he was

27  appointed the Acting Warden for Salinas Valley State Prison.  (Doc. 10-16 at 2-3)   Caden held

28  ───────────────
[4]Plaintiff reports he received a copy of the package list at some point but that he "lost" the list.  (Doc. 107-17 at 4)

1   this position until his retirement later that year.  Id. at 3.  Caden returned to work for the CDCR as

2   an annuitant and acted as a Chief Deputy Warden until 2009 when he left public service.  Id.

3   Despite his extensive career, at no time did he work at SATF and has no personal knowledge as to

4   the coverage that cameras, placed atop buildings, were positioned to capture on June 14, 2007.

5         Nevertheless, Caden attests that in his experience, cameras are mounted in key locations

6   so to capture areas where inmates and correctional staff are likely to meet.  (Doc. 107-16 at 4-5)

7   He asserts that outside the program building at SATF where this incident occurred, is such an

8   area.  Id.  Caden attests that SATF was required, according to CDCR policy, to have camera

9   coverage of this area.  Id.  Thus, Caden asserts that "cameras should have covered the Program

10   Office and the areas adjacent to it, where I understand the incident in this case to have taken

11   place." Id. at 11. Despite this, Caden admits that, in his experience, "[A]ll yards have areas where

12   camera coverage is absent."  Id. at 7.

13         Caden reports that these cameras are not monitored but they capture videotaped images

14   that can be viewed at a later time if needed.  (Doc. 107-16 at 4)  However, Caden reports that

15   these videotapes are "automatically overwritten within a few days and that affirmative action

16   should be taken to preserve [tapes of incidents] for later review."  Id. at 9.  Caden agrees that

17   typically these tapes would "be automatically looped over every three days."  Id. at 10.

18         Caden has reviewed the incident reports prepared after the event involving Plaintiff on

19   June 14, 2007.  (Doc. 107-16 at 8-9)  Caden observes that no report indicates that the footage

20   from the cameras positioned in the area, were reviewed to determine whether any captured the

21   altercation.  Id. at 9.  Caden asserts that had this been done, in his experience, a notation would

22   have been made in the investigatory reports.  Id.

23         Caden reports that, in his experience, correctional officers can request that the videotapes

24   and some officers have requested copies of videotapes in the past.  (Doc. 107-16 at 10)  Caden

25   does not report whether CDCR complied with these requests or whether copies of videotapes

26   have ever been provided to correctional staff.  Id.  Likewise, he does not report that honoring

27   these requests is the policy of the CDCR.[5, 6]

28

---

[5] The Court finds it hard to believe that the CDCR would routinely permit copies of videotapes showing secure areas

5

1    Defendant submits the declaration of Lt. L. Cartagena who attests that to the best of

2    Cartagena's knowledge, there was no camera coverage on the program office on the date of the

3    incident involving Plaintiff. (Doc. 137-2 at 2)

4    T. Pepper, the Incident Commander at SATF on July 14, 2014, attests that officers

5    involved in incidents with inmates are not given copies of videos taken of incidents except when

6    the officer is involved in an employee disciplinary action as a result.  (Doc. 137-4 at 1-2.)  This

7    information is confirmed by A. Pineda (Doc. 137-5 at 4), J. Sanchez (Doc. 137-6 at 3) and David

8    Tristan.[7]  (Doc. 137-7 at 7)  Pepper and Tristan report that Harris did not face disciplinary action

9    as a result of the altercation with Plaintiff. (Doc. 137-4 at 2; Doc. 137-7 at 8)  In any event,

10   Pepper recalls that the nearest camera to the incident with Plaintiff was 100 yards distant from it.

11   (Doc. 137-4 at 6)  He recalls that the video images taken from these roof-top cameras at that time

12   were of poor quality especially at a distance.  Id.

13   David Tristan reports that given Defendant's job classification, as a Search and Escort

14   Officer, he would not have the authority to preserve the videotape at issue.  (Doc. 137-7 at 4)

15   Tristan asserts that even if videotaped evidence had been collected related to the incident with

16   Plaintiff, Defendant would not have had access to the evidence lockers maintained by the

17   Investigative Services Unit which was charged with the responsibility of investigating the

18   incident at issue. Id. at 4-5, 12.

19   He disputes Caden's claims that videotape footage which may have captured an incident

20   must be reviewed when investigating the incident at issue.  (Doc. 137-7 at 5)  He reports that this

21   is required only with a "controlled use of force" incident.  Id.  In any event, Tristan reports that

22   the obligation to gather this evidence belonged to the Incident Commander, not to an involved

23   officer.  Id. at 12-13

24   Tristan asserts also that the person responsible for the integrity of an inmate's central file

---

25   to be released outside of a controlled setting, such as litigation. It would seem that doing so could place the security
     of the facility at risk. Mr. Caden fails to address this issue.

26   [6] Mr. Caden also asserts that he spoke to unnamed correctional officers who used to work at SATF during the
     timeframe at issue and they told him certain information.  Based upon the hearsay nature of this information and due

27   process concerns—given the speakers were not identified—the Court does not consider it.
     [7] David Tristan retired from the CDCR after 32 years and has for the last 10 years, acted as a consultant and expert

28   witness on the topic of corrections.  (Doc. 137-7 at 2)

1  is the Case Records Manager and that Search and Escort Officers, like Defendant, cannot access

2  an inmate's central file or remove documents from it.  (Doc. 137-7 at 11-12)

3      Defendant attests that he was injured in the altercation with Plaintiff and was taken for

4  medical care on-site and then to an area hospital.  (Doc. 137-3 at 1)  He was off work for two

5  weeks after this date due to the injuries he suffered and completed his incident report while

6  recuperating.  Id. at 1-2.  Plaintiff attests he was not aware that Plaintiff intended to sue him until

7  he was served with the complaint.  Id. at 2.

8      Finally, F. Villa reports that he has undertaken an exhaustive search and the package list

9  for July 14, 2007 and it cannot be located.  (Doc. 137-8 at 2)

10  **II.    Motion for reconsideration**

11      Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of

12  finality and conservation of judicial resources."  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir.

13  2003).  A reconsideration motion "should not be granted absent highly unusual circumstances."

14  McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999), cert. denied, 490 U.S. 1059 (1989).

15  A reconsideration motion "is not a vehicle for relitigating old issues, presenting the case under

16  new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"

17  See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).  "A party seeking

18  reconsideration must show more than a disagreement with the Court's decision, and recapitulation

19  of the cases and arguments considered by the court before rendering its original decision fails to

20  carry the moving party's burden."  United States v. Westlands Water Dist., 134 F.Supp.2d 1111,

21  1131 (E.D. Cal. 2001) (internal citations omitted).  "To succeed, a party must set forth facts or

22  law of a strongly convincing nature to induce the court to reverse its prior decision."  Id.

23      Reconsideration is appropriate if the court: (1) is presented with newly discovered

24  evidence; (2) has committed clear error or the initial decision was manifestly unjust; or (3) is

25  presented with an intervening change in controlling law.  School District 1J, Multnomah County

26  v. AC and S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994).  In

27  addition, there may be other highly unusual circumstances warranting reconsideration.  Id.  Under

28  this Court's Local Rule 230(j), a party seeking reconsideration must demonstrate "what new or

7

1  different facts or circumstances are claimed to exist which did not exist or were not shown upon

2  such prior motion, or what other grounds exist for the motion" and "why the facts or

3  circumstances were not shown at the time of the prior motion."

4     Despite the explicit finding by the court on July 12, 2012 that Defendant did not have

5  control over the video, Plaintiff has filed this current motion and fails to address why this Court

6  now should reconsider this earlier order issued by Judge Cohn and, indeed, Plaintiff fails to even

7  address this earlier order. (Doc. 23 at 2)  Thus, the requirements for reconsideration have not been

8  met and the motion is **DENIED** as to the videotape.

9  **II. Plaintiff's Motion for Spoliation**

10     **A.     The motion is not timely**

11     Though there is no firm deadline imposed by statute to file a spoliation motion, courts

12  hold that the motion must be filed in a reasonable time after the spoliation is discovered.

13  Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494, 506–08 (D.Md.2009).  In Goodman, the

14  court held that when evaluating the timeliness of a spoliation motion, the court must consider

15  when the motion is made in relation to when the spoliation is discovered and to when any

16  dispositive motion was filed and to be cautious of motions made on the eve of trial but to consider

17  the explanation of the moving party as to why the motion was not made earlier.  Id. at 506-507.

18     Here, the spoliation of the packing list was discovered by Plaintiff in about April 2011.

19  (Doc. 107-11 at 2)  It is difficult to determine when Plaintiff discovered the videotape had been

20  destroyed.  In his opposition to Plaintiff's motion to compel, Defendant noted only that Plaintiff

21  failed to demonstrate that the videotape existed; he did not claim that the videotape had been

22  destroyed.  (Doc. 19 at 4)  Indeed, Defendant asserted certain evidentiary privileges in the even

23  the videotape *did* exist.  Id. at 4-6.  Thus, this does not constitute discovery by Plaintiff of

24  spoliation.  Indeed, in a filing made on October 28, 2013, Plaintiff was seeking production of the

25  "video footage from the [CSATF-SP] E-Yard, Building #5 camera."  (Doc. 45-1)  Instead, it

26  appears that Plaintiff was informed unequivocally that the video no longer exists only on January

27  7, 2014 when Lieutenant Cartagena's declaration reported that the video was "looped over"

28  within three days. (Doc. 94-2 at 1)

1    The deadline for completing discovery and filing any discovery motions was May 13,

2  2012.  (Doc. 14)  The motion for summary judgment was filed on October 19, 2012 (Doc. 25) and

3  was recommended to be denied by Judge Beck on May 13, 2013 (Doc. 31).  This

4  recommendation was adopted by Judge O'Neill on July 10, 2013.  (Doc. 37).

5    Without doubt, the motion as to the package list is not timely.  Plaintiff has known for

6  nearly three years that the package list has been destroyed or lost.  In his motion, he offers no

7  explanation for why he waited until days before trial to file his spoliation motion related to the

8  package list.  Thus, the motion as to the package list is **DENIED**.

9    As to the videotape, it appears clear that Plaintiff knew that the video had been produced

10  in that he filed a motion to compel its production which was denied by the court based upon the

11  determination that Defendant did not control it.  (Doc. 23 at 2)  Notably, though being put on

12  notice that the video may not have ever existed, he failed to take any steps to seek to subpoena the

13  tape from the CDCR to confirm this and, clearly, which would have revealed that the video from

14  the camera atop the E5 building—no matter what it depicted—had been destroyed.  Once again,

15  Plaintiff fails to explain in his motion why he failed to take more timely steps.[8]  Indeed, he ignores

16  that all motions related to discovery were ordered to be filed by May 13, 2012.  (Doc. 14)

17  Seemingly, he takes the position that he was entitled to fail to act at that time, to await the

18  approach of the trial date to renew his interest in the videotape[9] and, when he then confirms the

19  videotape has been destroyed, file the motion for spoliation; not so.  Thus, the Court finds that

20  this conduct fails to demonstrate any degree of diligence and, as a result and as an alternative

21  basis, the motion as to the videotape is not timely and it is **DENIED**.

22  ///

23

24  [8] The fact that Plaintiff was proceeding pro se fails to explain this lapse, given he had earlier filed a motion to
subpoena this very same videotape from the CDCR.  (Doc. 16)

25  [9] Plaintiff asserts that he made clear that his motion for limited discovery (Doc. 82) was to "collect additional
evidence on this spoliation issue, and further that Mr. Emery was forthcoming in that motion that he intended to file

26  his sanctions motion."  (Doc. 148 at 8)  The Court and Plaintiff must have a very different understanding of the word
"forthcoming" because the Court was never informed or aware of this intention and, even after a again reviewing that

27  motion, finds no indication that the motion was for that purpose.  Instead, Plaintiff repeatedly justified the motion
because, in his view, the evidence at issue was important to his defense.  Moreover, if this was the case, the Court

28  does not grasp how production of Defendant's personnel file and being allowed to disclose an expert—which were
aims of the motion—could possibly have furthered Plaintiff's effort toward demonstrating spoliation.

1     **B.** <u>**Standards**</u>

2       **1.** <u>**Spoliation**</u>

3      "A party seeking sanctions for spoliation of evidence must prove the following elements:

4 (1) the party having control over the evidence had an obligation to preserve it when it was

5 destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;'[10]

6 and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the

7 party that sought the discovery of the spoliated evidence[.]" <u>Zubulake v. UBS Warburg LLC</u>, 220

8 F.R.D. 212, 216 (S.D.N.Y.2003).  Generally, a party has the obligation to preserve relevant

9 documents when it is reasonably foreseeable that litigation will probably ensue (<u>Performance</u>

10 <u>Chevrolet, Inc. v. Mkt. Scan Info. Sys., Inc.</u>, 2006 WL 1042359 at *1 (D. Idaho Apr. 18, 2006))

11 but, given "[l]itigation 'is an ever-present possibility in American life,'" (<u>Nat'l Union Fire Ins.</u>

12 <u>Co. v. Murray Sheet Metal Co., Inc.</u>, 967 F.2d 980, 984 (4th Cir.1992)) the duty to preserve does

13 not arise when litigation is merely possible. <u>Apple Inc. v. Samsung Electronics Co., Ltd.</u>, 888

14 F.Supp.2d 976, 991 (N.D. Cal. 2012).

15      The Court has the inherent power to control the judicial process and, therefore, to impose

16 sanctions for spoliation that, in its discretion, are appropriate. <u>Medical Laboratory Mgmt.</u>

17 <u>Consultants v. American Broadcasting Companies, Inc.</u>, 306 F.3d 806, 824 (9th Cir.2002).  Thus,

18 as a proper sanction, the Court may instruct the jury that it may infer that the lost evidence would

19 have been unfavorable to the spoiling party (<u>Akiona v. United States</u>, 938 F.2d 158, 161 (9th

20 Cir.1991)) or to issue case dispositive orders.  Likewise, when the loss is caused by an accident or

21 is the result of innocent action, the Court may reject a request for sanctions.  <u>Medical Laboratory</u>

22 <u>Mgmt. Consultants</u>, at 824.  Indeed, the Court's authority to sanction must be exercised "with

23 restraint and discretion" and only as necessary to necessary to address the wrong that has

24 occurred. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45 (1991).

25      The sanction should be designed to: (1) deter parties from engaging in spoliation; (2)

26 place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3)

---

27 [10] Notably, in <u>Glover v. BIC Corp.</u>, 6 F.3d 1318, 3129 (9th Cir. 1993), the Ninth Circuit determined that bad faith is
28 not required for an adverse inference instruction to be given.  "Surely a finding of bad faith will suffice but so will
simple notice of 'potential relevance to the litigation.'" <u>Id</u>.

1   restore the prejudiced party to the same position he would have been in absent the wrongful

2   destruction of evidence by the opposing party." West v. Goodyear Tire & Rubber Co., 167 F.3d

3   776, 779 (2d Cir.1999). To decide which specific spoliation sanction to impose, courts generally

4   consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence;

5   (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser

6   sanction that will avoid substantial unfairness to the opposing party." Apple, Inc. v. Samsung

7   Electronics Co., Ltd., 888 F.Supp.2d 976, 992 (N.D.Cal.2012) (internal quotation marks omitted).

8       **2.  Control**

9       Generally, a party is deemed to have control for purposes of discovery if he has "the legal

10   right to obtain documents on demand." United States v. Int'l Union of Petroleum & Indus.

11   Workers, 870 F.2d 1450, 1452 (9th Cir.1989). The Court holds here that the same test is

12   applicable when sanctions for spoliation are at issue.  Thus, the Court must consider the facts of

13   this situation to determine whether the Defendant has a legal right to the evidence at issue. Allen

14   v. Woodford, 2007 WL 309945 at *2 (E.D. Cal. Jan. 30, 2007).  "The requisite relationship is one

15   where a party can order the person or entity in actual possession of the documents to release

16   them." Id.  The burden of establishing control over the documents sought is on the party seeking

17   production. United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d at 1452.

18       Here, Plaintiff assumes, with little showing, that Defendant had control over the videotape

19   and the package list.  In support of this contention, Plaintiff relies upon the declaration of Mr.

20   Caden who reports that "Correctional officers have the right to *request* preservation of videotape

21   evidence. In my experience, officers have *requested* such preservation (and a copy of the

22   videotape) after incidents involving uses of force against inmates."  (Doc. 107-16 at 10) However,

23   Mr. Caden fails to explain whether these past requests have resulted in preservation or production

24   of videotapes.  Moreover, Mr. Caden fails to provide support for the proposition that correctional

25   officers have the legal right—meaning, the authority—to order the CDCR to produce the

26   videotape.  As to the package list Plaintiff provides no evidentiary support for this position at all.

27   Absent this, there is no showing that Defendant had control because the fact that the CDCR may

28   honor requests for preservation or production by correctional officers, does not demonstrate

1    Defendant had a legal right to demand the videotape.

2         Plaintiff relies upon a number of cases which provide little assistance here.  In Mitchell v.

3    Adams, 2009 WL 674348 at *8-9 (E.D. Cal. Mar. 6, 2009), at issue was a document request

4    issued to the defendant who was the warden of a prison.  Though the defendant claimed he did

5    not have the legal right to the document, given he was sued in his individual capacity, the Court

6    rejected this argument.  Id.  The Court held that the defendant failed to meet his burden of

7    demonstrating he did not have control of the documents sought and, further, the Court found "it is

8    clear that he may obtain from CDCR whatever record there may be with regard to plaintiff's

9    housing assignment while at" the prison where the warden worked.  Id. at 8-9.

10        In Quiroga v. Green, 2013 WL 6086668 at *1 (E.D. Cal. Nov. 19, 2013), the Court

11   considered a motion to reconsider which required the defendant, an employee of the CDCR, to

12   provide initial disclosures "similar to those required by  Federal Rule of Civil Procedure

13   26(a)(1)."  In determining that the motion should be denied, the Court determined that the

14   defendant was required only to produce documents he could "obtain within the course of his

15   employment" with the CDCR.  Id.  The Court held, "[I]t is this Court's experience that either

16   individual defendants who are employed by CDCR, and/or the Attorney General who represents

17   them, can generally obtain documents from CDCR by requesting them. If this is the case, then,

18   based on their relationship with CDCR, they have constructive control over the requested

19   documents and the documents must be produced."  Id.

20        Here, of course, Defendant is not represented by the Attorney General.  More importantly,

21   Plaintiff provides no evidence that Defendant's position as a Search and Escort officer entitled

22   him to access to Plaintiff's central file for any reason let alone for the purpose of obtaining or

23   preserving the package list.  Likewise, even had the video been preserved by ISU[11], Plaintiff fails

24   to demonstrate that as a result of his employment relationship from the CDCR, Defendant could

25   _____

26   [11] Likewise, Plaintiff's suggestion that Defendant had an independent duty to search out evidence or to interject himself into the investigation to ensure that ISU did not miss evidence is difficult to swallow.  Even Mr. Caden does not suggest that he could have done this but absent supervising the investigation, there is no explanation how

27   Defendant was to know the video was not booked into evidence by ISU.  On the other hand, had ISU allowed Defendant access to the investigation, there is no explanation as to how the integrity of that process could be

28   maintained.

1   have demanded a copy of it be produced from the evidence locker.

2          In Cantu v. Garcia, 2013 WL 595100 at *4 (E.D. Cal. Feb. 15, 2013), the Court used the

3   same exact language as in Quiroga but found, in essence, that the defendant failed to provide

4   factual support for the claim that he was not in constructive control of the documents. Id.  The

5   Court observed, "If Defendant chooses to stand on this objection, he must provide factual support

6   for the assertion that, in spite of his relationship to CDCR, he does not have possession, custody

7   or control of the requested documents. Defendant should also be mindful of the fact that he will

8   be precluded from using the requested documents, or any documents of this kind, as evidence in

9   support of summary judgment, in opposition to any of Plaintiff's positions, and in any way during

10  trial. Fed.R.Civ.P. 37(c)(1). Should Defendant stand on this objection and subsequently seek to

11  use the requested documents or like documents, he must, at minimum, supplement his responses,

12  and explain the method by which he obtained the documents. Most importantly, he will also be

13  required to demonstrate that the prior objection was taken in good faith given that he now has and

14  seeks to use the requested documents. Fed.R.Civ.P. 26(e)(1)." Id. In Cooper v. Sely, 2013 WL

15  146428 at *5 (E.D. Cal. Jan. 14, 2013), in Haney v. Adams, 2012 WL 6097084 at * 3 (E.D. Cal.

16  Dec. 7, 2012) and in Cato v. Avila, 2012 WL 3637909 at * 4 (E.D. Cal. Aug. 21, 2012), the Court

17  adopted the exact same approach as in Cantu.  In essence, all of these opinions determined, not

18  that the defendants had constructive control over the items sought, but that the defendants had

19  failed to provide specific factual information that they did not.

20         Along this same line, Plaintiff relies upon Kounelis v. Sherrer, 529 F.Supp.2d 503 (D.N.J.

21  2008), which imposed sanctions for spoliation when a videotape of the incident was not

22  preserved.  Significantly, the defendants in Kounelis, included not only the officers involved in

23  the altercation but also those who conducted the investigation into the altercation.  Id. at 510-511.

24         Based upon the evidence adduced after an hours-long hearing, the court determined, the

25  defendants' duty to preserve evidence had been triggered. Kounelis, at 515.  This finding was

26  "[b]ased primarily on the finding that Kounelis had requested a copy of the surveillance footage .

27  . ." Id.  Notably lacking in the opinion is any discussion as to why the court impliedly held that

28  the defendants had control of the videotape.  Instead, it appears that this issue was uncontested.

1  The Court held, "There is no dispute that Defendants were in control of the DVR hard drive that

2  contained the surveillance footage."  Id. at 520.

3        Moreover, in each of the cases cited by Plaintiff, the defendant bore the burden of

4  demonstrating a lack of control while here the burden must be borne by Plaintiff.  Zubulake, 220

5  F.R.D. at 216.  Despite this, Plaintiff offers no evidence to meet this burden.  He offers only the

6  declaration of Mr. Caden who attests that in the past, officers have requested preservation of

7  evidence and have requested copies of videotapes.  (Doc. 107-14 at 10)  He does not state that

8  these request are invariably granted—or that they ever have been granted—and he does not state

9  that the CDCR *must* comply with such a demand.

10       On the other hand, Plaintiff does not explain how he believes Defendant had the legal

11  right to require the CDCR to produce either the video or the package list.  The Court is aware

12  from the prior motion to compel filed by Plaintiff that Defendant's private counsel was required

13  to subpoena Plaintiff's central file in order to have access to it.  (Doc. 19-1 at 2; Doc.19-2) Thus,

14  this is evidence the CDCR would not produce it to Defendant upon his demand.[12]

15       Plaintiff fails to address the unique circumstances related to the package list.  Plaintiff

16  admits that he was provided a copy of the package list but misplaced it.  Given this, the Court is

17  at a loss to understand how spoliation claims can be leveled at Defendant.  Plaintiff fails to

18  provide any authority for the proposition that spoliation charges can be made after the evidence

19  has been provided.

20       On the other hand, Plaintiff notes that Defendant's counsel was able to obtain an

21  inmate housing history without evidence of subpoena and concludes, "This level of access to

22  CDCR records and staff confirms that Officer Harris had virtually unlimited access to the

23  evidence at issue . . ."  (Doc. 107 at 31.)  While, clearly, this demonstrates that certain records are

24  within Defendant's control this is the exact type of record-by-record analysis which the Allen

_____

[12] Plaintiff argues that because additional medical records were produced later once defense counsel "followed up,"
somehow this is evidence that the subpoena itself was a sham.  (Doc. 107 at 31) However, it is not an unusual
circumstance for an attorney to notice that something is missing from a record that has been subpoenaed and contact
the responding third-party for follow-up.  This does not mean in any way that the record would have been produced
in the absence of a subpoena.  This is true especially when medical records are at issue.  Plaintiff's supposition to the
contrary is not supported.

1    court found was needed (<u>Allen</u> at 2 ["The determination of control is often fact specific."]) and

2    which Plaintiff failed to do in his motion.  Thus, as an alternative basis, the motion is **DENIED**.

3           **3.  <u>Notice of litigation</u>**

4           It appears undisputed that the videotaped surveillance records of E Yard at SATF were

5    taped over within three days.  Plaintiff does not contend that the videotape at issue here was taped

6    over in some other time frame.  Despite this, Plaintiff fails to establish that Defendant was aware

7    of pending litigation such to impose the obligation to preserve this evidence.

8           The video-taped interview taken at the time of the incident, shows Plaintiff telling

9    investigating staff that he wants "to press charges against" Defendant and he states several times

10   he was assaulted by Defendant.  (Doc. 107-4)  However, at this interview, he does not make any

11   claim he intended to sue.  Moreover, in the notes of the initial medical examination, Plaintiff

12   reports he was injured while restrained and that he was in an altercation with custodial staff (Doc.

13   107-6 at 2) but it is not until June 21, 2007 that Plaintiff first reports that he intends to take legal

14   action.  (Doc. 107-5 at 2)  By this time, the parties agree, the videotape was already destroyed.

15   Thus, even if the Court found that Defendant had control of the videotape, there is an insufficient

16   showing that he had notice of pending litigation before the videotape was destroyed.

17          Plaintiff argues that his claim made on the day of the event that he wanted to press charges

18   against Defendant and the intention of the CDCR to pursue criminal charges against Plaintiff,

19   were sufficient to trigger Defendant's obligation to preserve evidence.  However, Defendant

20   would not have been a party to criminal action being taken by the Kings County District Attorney

21   against Plaintiff and, if criminal charges were sought against Defendant, Plaintiff would not be a

22   party to that criminal action. That being said, the Court does not find that all relevant evidence

23   should have been preserved at this time; it finds only that the obligation to do so was not

24   Defendant's.

25          Notably, none of Plaintiff's statements—whether on the day of the event or after—were

26   made to Defendant and there no evidence they were relayed to Defendant.  Plaintiff argues that a

27   claim of excessive was supposed to have been communicated to Defendant but fails to account

28   for the fact that Defendant was away from work for two weeks due to his injuries or that

1    Defendant denies he was ever told this (Doc. 137-3 at 3) and Pineda denies that he communicates

2    this type of information to involved officers (Doc. 137-5 at 4).  Moreover, by the time Defendant

3    returned to work, two weeks later, the video had been destroyed.  (Doc. 137-3 at 1-2)

4    Nevertheless, Plaintiff assumes, without any analysis, that all statements made by him about his

5    contentions to any of the CDCR's employees, somehow imputed knowledge to Defendant of a

6    pending lawsuit. If this is so, Plaintiff was obligated to provide analysis and citation to authority

7    for this extraordinary proposition.  Thus, the Court does not find Plaintiff has demonstrated that

8    Defendant was on notice that litigation would ensue before the videotape was destroyed.  Thus, as

9    an alternative basis, the motion is **DENIED**.

10       For this same reason, the Court cannot determine that Defendant had an obligation to alert

11   Plaintiff of the existence of the videotape such that he could take steps to prevent its destruction.

12       **4.  <u>Sanctions for the action of the CDCR</u>**

13       Even assuming the video should have been preserved, the Court is unwilling to foist the

14   CDCR's breach on Defendant. Moreover, Plaintiff fails to cite to any authority that imposing the

15   sanction on Defendant is appropriate given the spoliation, if any, was committed by the CDCR.

16   Plaintiff argues that the sanction is appropriate because Defendant was in privity with the CDCR.

17   Plaintiff relies upon <u>Morris v. Lewis</u>, 2012 WL 1549535 at *2 (N.D. Cal. Apr. 30, 2012) but this

18   case does not support the proposition that spoliation sanctions should be or could be imposed on

19   Defendant for the CDCR's actions.  In determining whether res judicata should apply, <u>Morris</u>

20   held, "A person technically not a party to the prior action may be bound by the prior decision if

21   that person's interests are so similar to a party's that the party was the person's virtual

22   representative in the prior action."  Here, of course, there is no showing that Defendant, being

23   sued in his individual capacity for his own actions makes him the CDCR's "virtual

24   representative."

25       Likewise, in <u>Strong v. Hubbard</u>, 2012 WL 273321 (E.D. Cal. Jan. 30, 2012), the Court

26   refused to allow an action to proceed after the plaintiff sued employees of the CDCR for refusing

27   to allow him to wear his personal tennis shoes to visits because he had previously raised this same

28   issue in earlier litigation in which other CDCR employees were named.  The court decided, in

1   essence, that the claims against the new defendants *should have been raised in the earlier case*

2   because they had the same nucleus of operative facts and, therefore, found it was barred under the

3   doctrine of res judicata.[13] Id. at 3.  Finally, in <u>Oluwa v. Perez</u>, 2007 WL 4554283 (E.D. Cal. Dec.

4   20, 2007), the court dismissed the case because it duplicated one filed earlier.  In both cases the

5   plaintiff sued because the Board of Prison Terms failed to set a term-setting hearing based upon

6   the directive of the Director of the CDCR.  <u>Id</u>. at 1.  In the first case only the Director of the

7   CDCR was named and in the second, only the chairperson of the BPT. <u>Id</u>. at 4.  In finding that

8   these parties were in privity, the court noted that "the CDCR 'oversees the activities of its boards

9   and divisions,' one of which is the Board of Parole Hearings ("BPH") which was formerly the

10   BPT." <u>Id</u>.  Likewise, the court determined that the two defendants had a close relationship and

11   their interests were aligned.  <u>Id</u>.

12        Though, clearly, Defendant and the CDCR have an employment relationship, this does not

13   mean, necessarily, that their interests are aligned and Plaintiff provides no analysis that they are.

14   In the current action, Defendant faces *personal* liability.  The fact that the CDCR must pay any

15   compensatory damage award imposed by the jury (Cal. Gov. Code § 825) does not change this

16   analysis.

17        First, California Government Code § 825 requires indemnification *only* for compensatory

18   damages.  It does not require indemnification for punitive damages.  This section expressly states,

19   "Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is

20   for punitive or exemplary damages." Cal. Gov. Code § 825(a).  The State must pay the punitive

21   award only if the Legislature chooses to do so and only after the Legislature makes certain

22   findings.[14] Cal. Gov. Code § 825(b).

23        Second, a judgment, even if completely satisfied by the CDCR, could have long term

24   impacts on Defendant including his ability to seek other employment, not to mention attempts to

25   obtain security clearances, the ability to obtain a concealed weapons permit or, even, the ability to

---

[13]The Court questions the application of res judicata to the facts presented in <u>Strong</u> given that the doctrine of collateral estoppel precluded the plaintiff from proceeding no matter whether the defendants to the actions were in privity.

[14] The Court is aware that legislative action can be avoided if there is an MOU with the union representing Defendant but there is no evidence that this is the case.

1    obtain a mortgage.  Moreover, a finding that a correctional officer subjected an inmate to

2    excessive force could trigger criminal charges being brought against the officer.  Thus, Defendant

3    shall answer only for the unlawful action he took, not that taken by the CDCR.

4         Finally, Plaintiff complains that failing to hold the CDCR responsible for spoliation, via

5    sanctions imposed on Defendant, would threaten the integrity of the judicial system.  Plaintiff

6    argues that because the CDCR can never be a defendant in cases involving excessive force due to

7    the Eleventh Amendment immunity, there is no remedy for what he claims are extensive abuses

8    of preservation of evidence.  However, of course, the CDCR has no such immunity from suit if

9    the matter is pursued in state court.  Moreover, even if the result is that the CDCR is not held

10   accountable in this instance, imposing liability on Defendant has not been demonstrated to correct

11   or even address, the wrong Plaintiff claims was committed *by the CDCR*.  Given this, the Court

12   finds that imposing sanctions on Defendant for the action of the CDCR would, in fact, threaten

13   the integrity of the judicial system.  Thus, the request to impose sanctions on Defendant for the

14   spoliation of the CDCR is **DENIED**.

15        **B.  <u>Evidentiary issues at trial</u>**

16        Despite that the Court does not find Plaintiff has made a sufficient showing that

17   Defendant engaged in spoliation, the Court does not preclude Plaintiff from testifying that he

18   believes a videotape captured the incident and that he requested that the video be produced by the

19   CDCR but that it was not produced.  He SHALL NOT claim in any fashion that Defendant failed

20   to produce the video or that Defendant is responsible for the destruction of the videotape.

21        If Plaintiff testifies in this manner, Defendant will be permitted to testify that the rooftop

22   of the E-5 building where the camera was located was 100 yards from where the event occurred

23   (and cross-examine Plaintiff as to this distance) and that he has never heard that such a video

24   capturing the incident ever existed.

25        Plaintiff may also testify that he received the package list but that he misplaced it.  He

26   SHALL NOT attribute this loss to Defendant in any manner.

27        **C.  <u>Evidence presented in the reply</u>**

28        Plaintiff presents significant evidence along with his voluminous reply document.  He

offers no explanation for his failure to provide this evidence with his motion and there is no showing that the evidence did not exist at that time or was inaccessible by Plaintiff.  There is virtually no time before trial to allow Defendant to address this newly filed evidence and to require Defendant to address this evidence now—without any showing whatsoever that Plaintiff could not have presented it with his motion—would be unduly onerous given trial is set to begin on Tuesday and, undoubtedly, Defendant is preoccupied with trial preparations.  Moreover, even if Defendant was given until Monday to address the new evidence, there would then be inadequate time for the Court to consider it and to decide this motion in advance of trial.  Thus, the Court declines to consider this new evidence. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).  In any event, given the brief fails to cite to this in any manner, the Court is not obligated to parse through it to try to figure out how Plaintiff feels this new evidence applies.

## ORDER

Based upon the foregoing, the Court **ORDERS**:

1.      The motion for spoliation (Doc. is **DENIED**;

2.      Except as noted above, there SHALL NOT be any evidence presented at trial related to Plaintiff's claim of spoliation of evidence.

IT IS SO ORDERED.

Dated:   **February 21, 2014**                    **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE

19